UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
M. EUGENE GIBBS,

        Plaintiff,                                    **MEMORANDUM AND ORDER**
                                                                22-CV-00011 (RPK) (LB)

        -against-

BANK OF AMERICA, N. A.; NATIONSTAR
D/B/A MR COOPER; BARBARA GIBBS;
UNITED STATES: FREDDIE MAC;
FEDERAL HOUSING FINANCE
AGENCY (FHFA); JUDGE MICHAEL G.
NETTLES; ALAN M. WILSON, SC AG;
CHIEF JUDGE WENDY L. HAGENAU;
CYNTHIA R. EADON; MCGUIRE WOODS, LLP;
SCOTT AND CORLEY, P.A; WILLIAM 'TOLL'
COSBY; PETER STERN, ESQ.; MICHAEL
ROSENFELD ART GALLERY; SMITHSONIAN
INSTITUTION; BREON PEACE; NANCY J.
WHALEY; MERRICK B. GARLAND;
CONSUMER FINANCIAL PROTECTION
BUREAU; NAACP; CONGRESSIONAL
BLACK CAUCUS, U.S. HOUSE OF
REPRESENTATIVES; AL SHARPTON;
ROD ROSENSTEIN [USA]; and DOES, 1-100,

        Defendants.
------------------------------------------------------------X

Rachel P. Kovner, United States District Judge:

    *Pro se* plaintiff M. Eugene Gibbs brings civil claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO") and New York General Business Law ("GBL") Section 349, alleging various conspiracies. Mr. Gibbs's wife brings similar claims as crossclaims. As explained below, most of these claims are barred because the couple has unsuccessfully pressed them in prior lawsuits. The remainder are dismissed because they are frivolous. Mr. Gibbs is advised that he may be subject to sanctions if he continues to file repetitive, frivolous, and vexatious lawsuits.

1

**Background**

Mr. Gibbs has filed a complaint and an amended complaint that purports to incorporate his original complaint in its entirety. *See* Compl. (Dkt. #1); Am. Compl. (Dkt. #6). The following facts are taken from the complaint and amended complaint and are assumed true for purposes of this order.

Mr. Gibbs first alleges a conspiracy to undermine the Home Affordable Modification Program ("HAMP") by Bank of America, Nationstar Mortgage, and various Doe defendants (collectively, the "HAMP Defendants"). Compl. 2-4. According to Mr. Gibbs, these defendants sought to subvert the HAMP program by falsely denying that they had received documents from homeowners and by issuing false notices claiming that homeowners had failed to submit required documentation. *Id.* ¶¶ 15-18, 72-81, 96-109.

Mr. Gibbs alleges that as part of this scheme, Bank of America mishandled his own attempt to modify his mortgage on his home in Florence, South Carolina that Mr. Gibbs owned with his wife, Barbara Gibbs. *Id.* ¶ 132. He alleges that he contacted Bank of America in 2009 to seek a modification of his mortgage loan from Bank of America for that South Carolina home. *Id.* ¶¶ 132, 136. According to Mr. Gibbs, he was given false information and incorrectly told that his mortgage was not eligible for a modification. *Ibid.* Nevertheless, Mr. Gibbs persisted in applying for the HAMP program, and was eventually told that he could enroll. *Id.* ¶¶ 137-139. Eventually, a Bank of America representative told him to send his HAMP application with supporting documentation to a certain fax number; Mr. Gibbs promptly did so. *Id.* ¶ 140. The Bank of America representative later informed Mr. Gibbs that his documents had been lost and that he would need to resend them. *Id.* ¶¶ 143, 145. Mr. Gibbs's application was subsequently denied due to a failure to submit the requested documents. *Ibid*. In November 2012, Bank of America

falsely told Mr. Gibbs that his mortgage was sold to Nationstar Mortgage when in fact it had been sold to Freddie Mac. *Id.* ¶¶ 151-52.

According to Mr. Gibbs, Bank of America's action was part of a larger conspiracy between the HAMP Defendants' attorneys, McGuire Woods, LLP, South Carolina's Attorney General, Alan Wilson, Judge Michael Nettles, Scott and Corley, P.A, and the HAMP Defendants to bribe the Consumer Financial Protection Bureau ("CFPB"), the Federal Housing Finance Agency ("FHFA"), Fannie Mae, and Freddie Mac to conceal Bank of America's sale of mortgage notes. *Id.* ¶¶ 173, 354-356; Am. Compl. ¶ 18.

At any rate, by the time it was sold, Mr. Gibbs's loan still had not been modified through the HAMP program. Compl. ¶ 153. Moreover, the failure of Bank of America to modify Mr. Gibbs's loan put him so far in arrears that his loan was in default. *Id.* ¶ 152. Because of this default, the HAMP Defendants hired McGuire Woods, LLP to litigate a foreclosure lawsuit against Mr. Gibbs. *Id.* ¶ 354.

Mr. Gibbs alleges that because of the foreclosure action, his wife was forced to file bankruptcy. *Id.* ¶ 360. Mr. Gibbs also alleges that the HAMP Defendants and McGuire Woods "acted in concert" with Chief Bankruptcy Judge Wendy Hagenau of the Bankruptcy Court of the Northern District of Georgia and her Courtroom Deputy, Cynthia R. Eadon, to ensure that Mr. Gibbs and his wife lost the bankruptcy action. *Id.* ¶¶ 360-64.

Next, Mr. Gibbs alleges that Attorney General Wilson conspired with attorney Peter Stern, Bill Cosby, the Smithsonian, and the Michael Rosenfeld Art Gallery (collectively, the "Art Defendants") to steal works of art by black artists. *Id.* ¶¶ 167, 179, 180, 264, 352. Mr. Gibbs alleges that the Art Defendants conspired to steal art from the family of William H. Johnson,

3

Gibbs's former client. *Id.* ¶ 183. He further asserts that the Smithsonian received 2,000 pieces of the stolen artwork and concealed the fact that the artwork was stolen. *Id.* ¶ 180.

Mr. Gibbs also alleges that the Reverend Al Sharpton, the National Association for the Advancement of Colored People ("NAACP"), and the Congressional Black Causes of the United States House of Representatives were bribed to remain silent about this theft, as well as about a "pedophilia ring." Am. Compl. ¶¶ 5, 19, 29.

Finally, Mr. Gibbs claims that the Art Defendants conspired with Rod Rosenstein, Attorney General Wilson, Judge Nettles, the Justice Department, US Attorney Breon Peace, and numerous John Doe FBI agents to have Mr. Gibbs arrested for a crime that never occurred. Compl. ¶¶ 167-68, 170, 351, 353; Am Compl. ¶¶ 2 11, 23, 25. This appears to be a reference to Mr. Gibbs's conviction for mailing threatening communications, in violation of 18 U.S.C. § 876. *See United States v. Gibbs,* 185 F. App'x 258 (4th Cir. 2006). Mr. Gibbs also alleges that those defendants conspired to transport Mr. Gibbs's medical documents from Connecticut to South Carolina. Compl. ¶¶ 167-68, 170, 351, 353. Mr. Gibbs suggests that, due to the actions of defendants, he was disbarred from the practice of law in South Carolina. *Id.* ¶ 266; *see In re Gibbs*, 562 S.E.2d 639, 640 (S.C. 2002) (noting disbarment).

Based on the foregoing allegations, Mr. Gibbs appears to assert RICO claims against all defendants, as well as a GBL claim against the Michael Rosenfeld Art Gallery. Compl. ¶¶ 157, 328-350, 365-368. Mr. Gibbs seeks to have this case declared a class action, and requests damages, injunctive relief, and declaratory relief. *Id.* at 93-94; Am Compl. 12-14. Mr. Gibbs has also filed separate motions for a temporary restraining order, a preliminary injunction, and a declaratory judgment seeking substantially the same remedies. *See* Dkt. ##2, 8, 9.

Mr. Gibbs also named his wife, Barbara Gibbs, as a defendant, Compl. ¶ 24, and suggests that she is also liable for his RICO claim, *id*. ¶¶ 339(d), (i), 340.  Ms. Gibbs has filed a crossclaim against Bank of America and McGuire Woods LLP, incorporating by reference the claims Mr. Gibbs raised in his complaint and amended complaint.  *See* Notice of "Deft Gibbs" Cross Claim 1 (Dkt. #41).  Bank of America, McGuire Woods LLP, Michael G. Nettles, and Alan M. Wilson have filed motions to dismiss.  *See* Dkt. ##23, 30, 74, 75.

## Standard of Review

Even when a plaintiff has paid the filing fee, a district court may dismiss a case, *sua sponte*, if it determines that the Court lacks subject matter jurisdiction or that the action is frivolous. *Fitzgerald v. First E. Seventh Street Tenants Corp.,* 221 F.3d 362, 363-64 (2d Cir. 2000) (per curiam).  A district court may also raise the issues of res judicata and collateral estoppel *sua sponte* against a party who has already had notice and an opportunity to respond to those issues.  *Curry v. City of Syracuse*, 316 F.3d 324, 331 (2d Cir. 2003) (citing *Doe v. Pfrommer*, 148 F.3d 73, 80 (2d Cir. 1998)); *Pino v. Ryan*, 49 F.3d 51, 54 (2d Cir. 1995).

While complaints by most *pro se* plaintiffs are generally liberally construed, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quotations and citations omitted), plaintiff's complaint is not entitled to special solicitude because plaintiff is a disbarred attorney.  *United States v. Pierce*, 649 F. App'x 117, 118 (2d Cir. 2016); *Mitchell v. Con Edison,* 531 F. App'x 140, 141 (2d Cir. 2013); *Allegrino v. Ruskin Moscou Faltischek, P.C.*, No. 19-CV-08900 (PMH), 2021 WL 429121, at *5 (S.D.N.Y. Feb. 8, 2021); *see also In re Gibbs*, 562 S.E.2d at 648 (noting Mr. Gibbs's disbarment).

**Discussion**

Mr. Gibbs's amended complaint is dismissed, as are Ms. Gibbs's crossclaims. Their RICO claims against Bank of America and Nationstar are barred by res judicata and collateral estoppel. Mr. Gibbs's claims relating to the theft of artwork, his disbarment, and his arrest are barred by collateral estoppel. Finally, the remainder of Mr. Gibbs's claims are frivolous, and Mr. Gibbs is advised that he may be subject to sanctions if he continues filing similar claims.

**I.    The RICO Claims Against Bank of America and Nationstar are Barred by Res Judicata.**

Res judicata bars Mr. and Ms. Gibbs's RICO claims (and crossclaims) against Bank of America and Nationstar. Res judicata bars subsequent litigation if: "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the [parties] or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000) (citations omitted). "Even claims based upon different legal theories are barred provided they arise from the same transaction or occurrence." *L-Tec Elecs. Corp. v. Cougar Elec. Org., Inc.*, 198 F.3d 85, 88 (2d Cir. 1999) (citation omitted).

As Mr. Gibbs and his wife shouldn't be surprised to learn, their claims are barred by res judicata. Both Mr. Gibbs and his wife already brought a RICO claim in the District of Colorado in 2015 against Bank of America and Nationstar. *See Gibbs-Squires v. Urb. Settlement Servs.*, No. 14-CV-00488 (MSK) (CBS), 2015 WL 196217, at *5-6 (D. Colo. Jan. 14, 2015), *aff'd*, 623 F. App'x 917 (10th Cir. 2015). That lawsuit, like this one, alleged that those entities and others conspired to undermine the HAMP program and that Bank of America's handling of plaintiff's mortgage modification request for his South Carolina home was part of this conspiracy. *Id.* at *3.

6

The court determined that Mr. and Ms. Gibbs failed to state a claim. *Id.* at *5-6. Two years later, Mr. and Ms. Gibbs again attempted to bring RICO claims against Bank of America and Nationstar—this time in the District of Maryland. *See Gibbs v. Bank of Am., N.A.*, No. 16-CV-2855 (GJH), 2017 WL 1214408, at *6 (D. Md. Mar. 31, 2017). Finding that the allegations regarding defendants' efforts to undermine the HAMP program were the same as those brought in the Colorado litigation, the court found that res judicata barred both plaintiffs' RICO claims against Bank of America and Nationstar. *Id.* at *5-7. So too here. Mr. and Ms. Gibbs' RICO claims against Bank of America and Nationstar arise from the same transactions as their claims against those companies in the District of Colorado and District of Maryland. And these RICO claims were raised before, in those prior suits. Accordingly, these claims are barred.

## II. The RICO Claims Against the Remaining Defendants are Barred by Collateral Estoppel.

Mr. Gibbs and his wife are collaterally estopped from bringing their claims related to the HAMP program and the foreclosure of their home. "Collateral estoppel, or issue preclusion, prevents parties or their privies from relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 288 (2d Cir. 2002) (citations omitted). The doctrine "applies when: '(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.'" *Id.* at 288-89 (citation omitted). Plaintiffs can be estopped from litigating issues that they fully and fairly litigated in a prior proceeding even against defendants not named in the prior suit. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329 (1979) (explaining that collateral estoppel principles

7

"preclude[] a plaintiff from relitigating identical issues by merely switching adversaries"); *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 329 (1971) ("Permitting repeated litigation of the same issues as long as the supply of unrelated defendants holds out reflects either the aura of the gaming table or a lack of discipline and of disinterestedness on the part of the lower courts.") (citation and internal quotation marks omitted); *see also Austin v. Downs, Rachlin & Martin,* 114 F. App'x 21, 22 (2d Cir. 2004).

The conditions for collateral estoppel are met with respect to Mr. and Ms. Gibbs' RICO claims relating to the HAMP program. In prior litigation, the couple brought RICO claims related to the HAMP Defendants' supposed HAMP program racketeering activity, as well as their efforts to bribe state and federal officials to conceal that activity. *See Gibbs*, 2017 WL 1214408, at *8-10; *Gibbs-Squires* 2015 WL 196217, at *4-6. Both courts dismissed these claims with prejudice. *See Gibbs*, 2017 WL 1214408, at *8-10; *Gibbs-Squires* 2015 WL 196217, at *4-6. Mr. Gibbs and his wife now supplement these claims by adding new defendants. Compl. ¶¶ 173, 354-356, 360-64; Am. Compl. ¶ 18. But because they already had an opportunity to fully and fairly litigate these issues, and a final judgment was entered against them, they are collaterally estopped from relitigating these claims.

### III. Mr. Gibbs's RICO Claims Relating to Art Theft, His Disbarment, and His Arrest are Collaterally Estopped.

Collateral estoppel also bars Mr. Gibbs's claims against the Art Defendants. Mr. Gibbs already litigated his RICO claims arising out of the alleged stolen artwork, his criminal prosecution, and his disbarment in the Middle District of Florida. *See Gibbs v. United States*, 865 F. Supp. 2d 1127, 1142-46 (M.D. Fla. 2012), *aff'd*, 517 F. App'x 664 (11th Cir. 2013). The court dismissed these claims with prejudice. *Ibid.* Mr. Gibbs tried to relitigate the stolen artwork issue

8

again several years later, in a suit brought in the Eastern District of Pennsylvania. *Gibbs-Squires v. Cosby*, No. 16-CV-768 (MSG), 2017 WL 5515916, at *1 (E.D. Pa. Mar. 7, 2017). His claims were found to be collaterally estopped. *Id.* at *4-5. Mr. Gibbs now supplements his claims by adding new defendants. But he remains collaterally estopped from re-litigating these claims because he already had a full and fair opportunity to litigate them in the Middle District of Florida, which found his claims lacking.

**IV.    Mr. Gibbs's Remaining Claims are Frivolous.**

Mr. Gibbs's remaining claims are frivolous. "A court may dismiss a claim as 'factually frivolous' if the sufficiently well-pleaded facts are 'clearly baseless'—that is, if they are 'fanciful,' 'fantastic,' or 'delusional.'" *Gallop v. Cheney*, 642 F.3d 364, 368 (2d Cir. 2011) (quoting *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992)). Mr. Gibbs's remaining allegations easily satisfy this standard. Gibbs alleges a wide-ranging conspiracy whereby South Carolina's Attorney General, a federal judge, two separate law firms, and the HAMP Defendants bribed two federal agencies as well as Fannie Mae and Freddie Mac to conceal changes to his and other homeowners' loan servicer. Compl. ¶¶ 173, 354-356; Am. Compl. ¶ 18. But that's not all. The HAMP Defendants, a law firm, a federal bankruptcy judge, and her courtroom deputy somehow conspired to ensure that Mr. Gibbs and his wife lost their bankruptcy action. *Id.* ¶¶ 360-64. In the same breath, Mr. Gibbs claims that Reverend Al Sharpton, the NAACP, and the Black Caucus were bribed to remain silent about the Smithsonian's theft of thousands of paintings by black artists and a "pedophilia ring." Am. Compl. ¶¶ 5, 19, 29. "[T]he courts have no obligation to entertain pure speculation and conjecture." *Gallop*, 642 F.3d at 368.

Additionally, a "complaint is frivolous when, among other things, it 'is based on an indisputably meritless legal theory,' *i.e.,* it 'lacks an arguable basis in law.'" *Tapia-Ortiz v. Winter*,

185 F.3d 8, 11 (2d Cir. 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (citation and internal quotation marks omitted)).  In *Tapia-Ortiz*, the Second Circuit dismissed as frivolous a RICO conspiracy claim alleging that twenty judges, the Second Circuit's staff attorneys, a district judge, and an Assistant United States Attorney engaged in a RICO conspiracy.  *Id.* at 9-11.  The Second Circuit found that the claim lacked even an arguable basis in the law.  *Id.* at 11.  The same result follows here.  Although he spends nearly two-hundred pages alleging various RICO conspiracies, Mr. Gibbs alleges no facts establishing how the government defendants joined the criminal enterprises; when the conspiracies began; what roles each of the alleged co-conspirators played; how precisely the conspiracies operated; or how he was negatively impacted by these activities.  These claims are therefore frivolous.  *See ibid.*

Mr. Gibbs is hereby informed that the Court will not tolerate repetitive, frivolous and vexatious litigation and that he may be subject to a filing injunction in this Court if he continues to file similar actions.  *See Lau v. Meddaugh*, 229 F.3d 121, 123 (2d Cir. 2000) (per curiam); *Hong Mai Sa v. Doe*, 406 F.3d 155, 158 (2d Cir. 2005) ("If a litigant has a history of filing vexatious, harassing or duplicative lawsuits, courts may impose sanctions, including restrictions on future access to the judicial system.") (citations and internal quotation marks omitted).

## Conclusion

Because the defects in Mr. Gibbs's claims (and his wife's crossclaims) are "substantive" and cannot be cured with "better pleading," leave to amend the complaint is denied.  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see Ashmore v. Prus*, 510 F. App'x 47, 49 (2d Cir. 2013) (summary order) (noting that leave to amend is futile where barriers to relief cannot be surmounted by reframing the complaint).  Mr. Gibbs's motions for a temporary restraining order,

a preliminary injunction, and a declaratory judgment are denied as moot. The Clerk of Court is directed to enter judgment dismissing the action.

Although Mr. Gibbs paid the filing fee to bring the action, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any *in forma pauperis* appeal from this order would not be taken in good faith. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

                                                  */s/ Rachel Kovner*
                                                  **RACHEL P. KOVNER**
                                                  United States District Judge

Dated: May 10, 2022
       Brooklyn, New York